IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIVIAN WILSON, | ) |
| | ) |
| Plaintiff, | ) 14 CV 5726 |
| | ) |
| v. | ) Judge John Z. Lee |
| | ) |
| INTEGRATED MEDICAL SYSTEMS, INC., an Illinois corporation, INTEGRATED MEDICAL SYSTEMS INTERNATIONAL, INC., a Delaware corporation, and UNIVERSITY OF ILLINOIS HOSPITAL AND HEALTH SCIENCES SYSTEM, an Illinois municipal corporation, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vivian Wilson has sued Defendants Integrated Medical Systems, Inc.,[1] Integrated Medical Systems International, Inc. ("IMS"), and the University of Illinois Hospital and Health Sciences System,[2] alleging that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a). Specifically, Wilson alleges that Defendants discriminated and retaliated against her after she suffered injuries that required

---

[1] Defendant Integrated Medical Systems, Inc. no longer exists. *See* Pl.'s 56.1 Statement at 12, ECF No. 76.

[2] The Court acknowledges that the University argues it should have been sued as the Board of Trustees of the University of Illinois, University's Mem. Mot. Summ. J. at 1, ECF No. 70, and treats this case as if the University had been properly named. *See* 110 Ill. Comp. Stat. 305/1, 330/1, 330/2.

her to take a leave of absence from work. Each Defendant has moved for summary judgment. For the reasons stated herein, the Court grants both motions.

## Factual Background

Plaintiff Vivian Wilson was hired by Defendant IMS in May 2012. Pl.'s Resp. IMS's SOF ¶¶ 1, 16, ECF No. 76. IMS employs individuals who perform sterile processing services on operating room equipment, typically in hospitals. *Id.* ¶ 6. Although these employees may work in hospitals in various locations around the country, they are paid by IMS, and IMS controls all benefits and scheduling. *Id.* ¶¶ 8, 14. In the course of her employment with IMS, Wilson was placed at the University of Illinois Medical Center, located in Chicago, Illinois. *Id.* ¶ 1.

On September 2, 2012, Wilson was injured outside of work. *Id.* ¶ 22. She sustained injuries to both hands, as well as her right thigh, and was hospitalized until September 4. *Id.* ¶¶ 23–24. Wilson was away from work throughout the month of September, but she, her son, and her doctor were in contact with her supervisor at IMS. *Id.* ¶¶ 26–32.

On September 26, 2012, Wilson's doctor informed IMS that Wilson would undergo surgery on her left hand on September 27. He also noted that Wilson would be subject to the following restrictions after the procedure: "no use of left hand for approx. 8 weeks. After 8 weeks, 5 lb limit x 2 weeks." *Id.* ¶ 32.

IMS terminated Wilson's employment effective October 1, 2012, and Wilson received notice on October 3. *Id.* ¶¶ 37–38. Despite the termination, Wilson's doctor

continued to send updates to IMS about her condition and lifted all work restrictions on February 20, 2013. *Id.* ¶¶ 40, 44.

Wilson filed a charge of discrimination with the Equal Employment Opportunity Commission against Integrated Medical Systems, Inc. on November 16, 2012. *Id.* ¶ 45. This charge ("first charge") alleged disability discrimination and stated the following:

> I began my employment with Respondent on or around May 7, 2012. My most recent position was Sterile Processing Supervisor. Respondent was aware of my disability. I was denied reasonable accommodation. Subsequently, I was discharged. I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

IMS's SOF, Ex. 27, ECF No. 68. The first charge listed the last date of discrimination as October 3, 2012—the day Wilson received notice that she had been terminated.

The EEOC issued Wilson a notice of right to sue on May 20, 2013. Pl.'s Resp. IMS's SOF ¶ 48. Subsequently, she filed a second charge of discrimination with the EEOC on July 29, 2013. *Id.* ¶ 49. This charge ("second charge") added the University of Illinois Hospital and Health Sciences System as an employer. *Id.* The second charge stated the following:

> I was placed by Respondent Integrated with Respondent University of Illinois Hospital on or around May 7, 2012, for a contract position as a Sterile Processing Supervisor. From September 3, 2012, through and including October 3, 2012, I, and people acting on my behalf, requested a reasonable accommodation of a medical leave to recover from surgery and severe injuries I had suffered. I was fired on October 3, 2012. I believe I have been discriminated against based on my disability and/or the perception of my disability and/or the record of my disability and/or retaliated against for having requested a reasonable

3

> accommodation and/or for otherwise having asserted my rights under the Americans with Disabilities Act.

IMS's SOF, Ex. 30. Unlike the first charge, in the second charge Wilson checked the "retaliation" box on the EEOC form. *Id.* The charge also listed the last date of discrimination as October 3, 2012. Pl.'s Resp. IMS's SOF ¶ 51. The EEOC issued Wilson a second notice of right to sue based on the second charge on April 25, 2014. *Id.* ¶ 52.

Wilson initiated this lawsuit by filing a complaint on July 25, 2014. *Id.* ¶ 53 The complaint alleges discrimination and retaliation under both the ADA (Counts I and II) and the Rehabilitation Act (Counts III and IV). Am. Compl. ¶¶ 41–56, ECF No. 22.

## **Legal Standard**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

4

## Analysis

### I. IMS

#### A. ADA Claims

The viability of Wilson's ADA claims against IMS depends on whether she filed suit in time after the EEOC had issued the right to sue notice. Under the ADA, a plaintiff must file a timely charge with the EEOC and receive a notice of right to sue before she can file suit against an employer. *See* 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e–5, which outlines Title VII's procedural requirements); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1288 n.3 (7th Cir. 1993). The plaintiff must file suit within 90 days from the date the EEOC provides the right-to-sue notice. *See Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999).

Here, IMS argues that it is entitled to summary judgment on Wilson's ADA discrimination and retaliation claims (Counts I and II) because she filed suit more than 90 days after the EEOC issued the first right-to-sue notice. IMS's Mem. Supp. at 5. Wilson, on the other hand, contends that the second EEOC charge contained additional information, making the second right-to-sue notice the proper starting point for the 90-day period. *See* Pl.'s Mem. Opp. at 8, ECF No. 77.

"To allow a plaintiff to re-allege an earlier EEOC charge in a subsequent EEOC charge would render the 90-day time limit for filing lawsuits 'meaningless,' because it would allow the plaintiff to 'evade [the filing requirement] simply by seeking additional Notices of Right to Sue whenever [he] pleased.'" *Vitello v. Liturgy Training Publ'ns*, 932 F. Supp. 1093, 1098 (N.D. Ill. 1996) (alterations in original).

5

Thus, if the 90-day period has expired for a plaintiff's first EEOC charge, she must demonstrate that her second EEOC charge is not a "mere re-allegation of the first EEOC charge, *i.e.*, not reasonably related or similar enough to be within the scope of the first charge." *Blalock v. Bethesda Lutheran Homes & Servs., Inc.*, 01 C 9188, 2002 WL 31833693, at *3 (N.D. Ill. Dec. 16, 2002); *see also Mason v. United Food & Commercial Workers Int'l Unions*, 04 C 7148, 2006 WL 644028, at *4 (N.D. Ill. Mar. 7, 2006) (a second EEOC charge is time-barred if it is a "mere recantation of [the] first charge").

In her first EEOC charge, Wilson alleges that IMS was aware of her disability, failed to reasonably accommodate her, and discharged her, in violation of the ADA. IMS's SOF, Ex. 27. The first charge indicates that the last date of the discrimination was October 3, 2012. *Id.* In the second EEOC charge, Wilson alleges that she was denied the reasonable accommodation of a medical leave for injuries she suffered and was discharged, in violation of the ADA. IMS's SOF, Ex. 30. In this charge, Wilson named the University as an employer and checked the "retaliation box." *Id.* The second charge indicates the same date, October 3, 2012, as the last date of the discrimination. *Id.* Neither charge alleges any continuing action by either IMS or the University.

The Court agrees with IMS that the allegations in Wilson's second charge are "like or reasonably related" to the allegations in her first charge because they both were based on the same facts. *See Johnson v. Chi. Bd. of Educ.*, No. 05 C 4294, 2007 WL 317030, at *5 (N.D. Ill. Jan. 31, 2007) (allegations in a later EEOC charge were

6

"like or reasonably related to" those in an earlier, untimely charge because they were based on the same acts). Although in the second charge she took the additional step of checking the box for retaliation, the first charge contained all the necessary factual underpinnings of her retaliation claim—namely, she asked for an accommodation and was then fired. *See id.*; *see also Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (holding that the substance of the plaintiff's EEOC charge trumped the fact that she had not checked the appropriate box).

In her response, Wilson argues that she should be afforded some flexibility because she was pursing these charges on a *pro se* basis. But the law is well-settled that even *pro se* claimants are strictly bound by the statutory deadlines. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151–52 (1984) (refusing to toll the 90-day limitation for a *pro se* plaintiff and noting that "[p]rocedural requirement established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"). Therefore, Wilson's ADA claims against IMS are time-barred.[3]

**B.     Rehabilitation Act Claims**

Based on the same conduct from her ADA claims, Wilson also asserts claims for discrimination and retaliation under the Rehabilitation Act. To make out a

---

[3] To the extent that IMS is arguing that the Rehabilitation claims are also time-barred, the Court disagrees. A plaintiff filing suit under the Rehabilitation Act, unlike one filing suit under the ADA, is not required to file a charge with the EEOC before filing a complaint. *See Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013).

7

prima facie case of Rehabilitation Act discrimination, a plaintiff must show: "(1) that [she] is a 'handicapped individual' under the Act, (2) that [she] is 'otherwise qualified' for the [benefit] sought, (3) that [she] was [discriminated against] solely by reason of [her] handicap, and (4) that the program or activity in question receives federal financial assistance." *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 119 (7th Cir. 1997) (alterations in original); *see also* 29 U.S.C. § 794(a).[4] IMS argues that summary judgment is appropriate as to Wilson's Rehabilitation Act claims because she has failed to show the fourth element: that IMS received federal financial assistance. *See* IMS's Mem. Supp. at 13–15.

The only evidence in the summary judgment record on this point comes from IMS's responses to Wilson's requests for admissions. For each of the relevant years, Wilson asked IMS to admit that it had received funds from the federal government. *See* IMS's SOF, Ex. 32 at 6–7. In response, IMS explained that it "has a contract with the federal government to provide [Veterans Affairs] services." *See id.* That response is the extent of the evidence on the issue.

The Rehabilitation Act itself does not define "federal financial assistance." § 794(a). Nevertheless, the regulations from the Department of Health and Human Services interpreting the Act contain the following definition:

---

[4] The fourth requirement—that the defendant receive federal financial assistance—applies with equal force to the retaliation claim.

8

> Federal financial assistance means any grant, loan, contract (other than a procurement contract or a contract for insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:
>
> (1) Funds;
>
> (2) Services of Federal personnel; or
>
> (3) Real and personal property or any interest in or use of such property. . . .

45 C.F.R. § 84.3(h). This definition has been understood to equate federal financial assistance to a subsidy—that is, payments or transfers for less than fair market value. *See Degutis v. Consol. Rail Corp.*, No. 93 C 5171, 1994 WL 484525, at *3 (N.D. Ill. Sept. 2, 1994) (Williams, J.); *see also DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990); *Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1209 (9th Cir. 1984). The mere fact that an entity may have a contract with the federal government "does not make it amenable to suit under section 504." *Degutis*, 1994 WL 484525, at *3.

With that definition in mind, IMS's contract to provide VA services qualifies as federal financial assistance only if IMS is being compensated at above-market rates. But the summary judgment record before the Court is devoid of any facts to support such a supposition. All Wilson has pointed to is the admission by IMS that it has a contract with the federal government to provide Veterans Affairs services. As noted, this alone is not enough. Thus, because the evidence before the Court is not sufficient to show that IMS received any federal financial assistance, Wilson has not met her burden of establishing a prima facie case for her claims under the Rehabilitation Act.

9

Accordingly, the Court grants IMS's motion for summary judgment on all counts.

## II. The University

Wilson relies on a joint-employer theory to assert the same claims against the University as she does against IMS. In turn, the University argues that it is entitled to summary judgment because it was not Wilson's employer or, in the alternative, because it had no knowledge of Wilson's injuries or alleged requests for accommodation. University's Mem. Supp. at 13–15, ECF No. 70.

The Court need not reach the issue of joint employers here because it is clear that the University had no knowledge of the discrimination and retaliation Wilson allegedly suffered. In *Whitaker v. Milwaukee County*, the Seventh Circuit adopted the position taken by several other circuit courts that "establishing a 'joint employer' relationship does not create liability in the co-employer for actions taken by the other employer." 772 F.3d 802, 810–11 (7th Cir. 2014). The court relied in part on the EEOC's Compliance Manual, which states that in a joint employer relationship, a co-employer is liable "*if it participates* in the . . . discrimination" or "if it *knew or should have known about the . . . discrimination and failed to undertake prompt corrective measures within its control.*" *Id.* at 812.

Here, there is no dispute that the University "was never informed of Plaintiff's injury, her alleged requests for accommodation, her absence from work, or her doctor's restrictions." Pl.'s Resp. University's SOF ¶ 54, ECF No. 76. Furthermore, there is no dispute that it was IMS, not the University, that terminated Wilson's employment. *Id.* ¶ 56. There is nothing in the record to suggest

that the University either participated in the discrimination and retaliation—since, as is undisputed by the parties, it was unaware of Wilson's injury—or knew about the discrimination and retaliation and failed to act. Likewise, Wilson has presented no evidence and makes no argument that the University should have known about IMS's alleged wrongful actions. Therefore, summary judgment is granted in favor of the University on all counts.

## Conclusion

For the reasons stated herein, the Court grants both motions for summary judgment [65] [69]. Civil case terminated.

**IT IS SO ORDERED.**  ENTERED    9/12/16

_____
**John Z. Lee**
**United States District Judge**